IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10cv02272 WYD-KLM

MATHEW DAUGHERTY
DARWIN L. HARPER,
DANIEL GASTON,
DAVID GASTON,
GUILLERMO GRADO,
CHARLES GRIMSLEY, and
JARED W. LANGLEY on their behalf and on behalf of all those similarly situated,

    Plaintiffs,

v.

ENCANA OIL & GAS (USA), INC., a Delaware corporation.

    Defendant.

# FIRST AMENDED COMPLAINT

COMES NOW Plaintiffs Mathew Daugherty, Darwin L. Harper, Daniel Gaston, David Gaston, Guillermo Grado, Charles Grimsley, and Jared W. Langley, by and through their attorneys, Karp Neu Hanlon, P.C., and for a First Amended Complaint against the Defendant allege and aver the following:

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 and 216(b).

2. Plaintiffs are all citizens of the United States. Plaintiff Langley is a domiciliary and resident of the state of Texas. The remaining Plaintiffs are domiciliaries and residents of the State and

District of Colorado.

3. Defendant Encana Oil & Gas (USA), Inc. (hereinafter "Encana") is a Delaware corporation doing business in the State and District of Colorado.

4. Upon information and belief, Defendant is a corporation engaged in natural gas development, production and related activities in, at least, Colorado, Wyoming, Texas, Louisiana and Pennsylvania and, more specifically, the Jonah Field in southwest Wyoming, the Piceance Basin in northwest Colorado and in Eastern Texas and the Fort Worth area in Texas and it has constructed, drilled, serviced, maintained, obtained or otherwise has been involved in numerous gas well locations located in these regions.

5. Defendant uses the services of oil pumpers (hereinafter "Pumpers").

6. Defendant is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s) in that Defendant had, at all relevant times, two or more employees handling, selling, or otherwise working on goods or materials that have been moved in, or produced for, commerce and Defendant had annual gross volume of sales made or business done of at least $ 500,000.

7. During the three (3) year period immediately preceding the filing of this Complaint, Defendant engaged Plaintiffs as Pumpers to service and maintain its gas wells in the Piceance Basin in Western Colorado or in Texas.

8. Plaintiff Daugherty was first hired by Defendant in January 2007.

9. Plaintiff Harper was first hired by Defendant in approximately 2005.

10. Plaintiff Grimsley was first hired by Defendant in approximately 2007.

11. Plaintiff Grado was first hired by Defendant in approximately 2005.

12. Plaintiff Daniel Gaston was first hired by Defendant in approximately November 2007.

13. Plaintiff David Gaston was first hired by Defendant on May 15, 2008.  However his hiring was through the auspices of Mesa Field Services, Inc., as discussed in paragraph 33 below.

14.  Plaintiff Jared Langley was first hired by Defendant in approximately 2005.  He worked in Colorado until May 2009 when he transferred to Texas where he worked for another two months.

15. Defendant classified Plaintiffs as "independent contractors."  However, Defendant, at all relevant times, was an "employer" who "employed" Plaintiffs to perform "work" as defined by 29 U.S.C. §§ 203(d) and 203(g).

16. Defendant has knowingly and willfully violated, and continues to knowingly and willfully violate, the provisions of the Fair Labor Standards Act by employing Plaintiffs, and those similarly situated to Plaintiffs, for work weeks longer than forty hours without paying overtime compensation in violation of the Fair Labor Standards Act,  29 U.S.C. §§ 201, *et. seq*.

17. Aside from Plaintiffs, Defendant has engaged additional Pumpers who Defendant has classified as "independent contractors."  These additional Pumpers are each "similarly situated" to Plaintiffs within the meaning of 29 U.S.C. § 216(b).  The  similarly situated Pumpers each have claims to overtime compensation which are of the same nature as Plaintiffs' claims.  Defendant is in possession of the names, addresses and employment records of the Pumpers similarly situated to Plaintiffs.  Pursuant to 29 U.S.C. § 216(b), these individuals are entitled to Court-ordered notice of this lawsuit so that they may have the opportunity to give written consent to become a party-plaintiff.

18. Defendant has hired yet additional Pumpers who Defendant has classified as "employees,"

including, without limitation, Joseph K., David J., Russell C., Mathew C., Eric C, Sean L. and Christopher S. Defendant compensates these individuals with regular hourly wages, health insurance benefits, workers compensation coverage, post-termination unemployment benefits when appropriate and overtime compensation paid at time and a half. The job duties and responsibilities of these individuals are identical to all other Pumpers, including Plaintiffs.

19. The Pumpers' primary duty consists of supervising and improving the performance of each well along routes designated by Defendant. The Pumpers tuned and optimized each well by making electronic and/or mechanical adjustments. The Pumpers also serviced and maintained each well by installing replacement parts.

20. Defendant also employs Jeremiah C. Gerald P., Shane V., T.J. C. and David G. as supervisors. At all times relevant hereto, some or all of these individuals maintained supervisory control over Plaintiffs, those similarly situated, and those classified by Defendant as "employees" in the Piceance Basin by enforcing the following rules and practices.

21. Unless otherwise noted, the allegations contained in paragraphs 22 through 31, 36 and 37, apply equally to all Pumpers including Plaintiffs and including those classified by Defendant as an "independent contractor" or "employee."

22. Defendant required each Pumper to be at work each day before 7 a.m. but not earlier than 5 a.m.

23. Defendant dictated which wells each Pumper maintained by providing each with a route along which each Pumper would work.

24. At various times, Defendant controlled the number of hours to be worked by Pumpers. Thus,

all hours worked by Pumpers were performed with Defendant's approval. Most recently, and only after Defendant received the Plaintiffs' demand for overtime compensation, Defendant prohibited the Pumpers from working in excess of eight hours per day. However, prior to this demand Defendant regularly required the Pumpers to work in excess of 40 hours per week.

25. Defendant did not permit the Pumpers to work for a third-party at the same time the Pumpers worked for Defendant. When Plaintiff Grimsley attempted to work for another gas exploration and production company, Laramie Energy, he was told by a supervisor of Defendant that it was not acceptable, that he could not continue to perform work for Encana and Laramie Energy at the same time, and that he needed to focus his work with Encana. This work for Laramie Energy lasted for only a short period of time and Plaintiff discontinued same because of the statement of his supervisor.

26. Defendant electronically monitored the metrics and operating status of each well maintained by the Pumpers, thereby monitoring the activities of the Pumpers. Defendant monitored each Pumper's performance by requiring them to attend periodic "well review" performance reviews in which the performance of each well was evaluated and each Pumper's efforts were analyzed. Defendant also required the Pumpers to attend periodic group meetings to discuss performance issues.

27. Defendant verified each Pumper's ability to perform the essential functions of his job by requiring each to pass a field examination.

28. Defendant required each Pumper to perform his work in accordance with a manual containing Standard Operating Procedures, which Defendant provided.

29. Defendant subjected Pumpers to discipline for failing to follow the Standard Operating Procedures. For example, upon information and belief, "independent contractor" Jason H. was suspended for a period of days for failing to follow Defendant's Standard Operating Procedures with regard to his coordination of efforts with an oil transport truck.

30. Defendant required Pumpers to attend OSHA safety training sessions including, but not limited to, Hazardous Waste Operations and Emergency Response (HAZWOPER) training.

31. Defendant required the Pumpers to make a request for time away from work and for vacation and supervisory approval was required before the Pumper could take time off.

32. Defendant required each Plaintiff to create a business entity under which they would fictionally operate. Plaintiff Daugherty created Daugherty Consulting, Inc. Plaintiff Harper created LB Pumping, LLC. Plaintiff Grimsley created Flow Rite Testing, Inc. Plaintiff Grado created W. Grado, LLC. Plaintiff Langley created JL Production, LLC, with the assistance and advise of Defendant's legal counsel in Denver. Plaintiffs David Gaston and Daniel Gaston did not create a business entity. None of the Plaintiffs made any capital contribution, have not marketed, and do not have offices, other than the use of their homes, for these companies. Defendant prohibits Plaintiffs from hiring additional employees through their companies to perform work associated with Defendant.

33. Upon information and belief, Defendant has a master services agreement with Mesa Field Services, Inc. ("MSF"). MSF is owned, in part, by Mike L. Mesa Field Services has engaged up to thirty "independent contractor" Pumpers, including Plaintiff David Gaston. In fact, MSF is a "straw man" corporation which does nothing more than act as a conduit to Encana for the submission of

hours for those such as Plaintiff David Gaston, the collection of payments by Defendant for these hours, and then the payment of wages from Defendant to MSF's "independent contractors" after MSF takes $5 per hour as its cut. Plaintiff David Gaston is, in fact, an employee of the Defendant. Aside from the payment of wages through MSF, each of the allegations contained in this Amended Complaint which concern the duties and responsibilities of Plaintiffs applies equally to Plaintiff David Gaston.

34. The Plaintiffs had little or no opportunity to experience a profit or loss related to their employment. Defendant paid each Pumper a fixed hourly rate between $40 per hour and $43 per hour. The Pumpers did not share in Defendant's monetary success; their income from work was limited to their hourly wage.

35. The Plaintiffs had little or no ability to control the cost associated with their work and their investment in their work was minimal. Their costs and expenses included the costs to operate and maintain their trucks and costs associated with insurance policies, which Defendant required the Plaintiffs to obtain. Defendant provided all essential tools, clothing, equipment and machinery needed to perform the Pumpers' duties.

36. The amount of skill required to perform the Pumpers' duties was low. Defendant routinely hired workers with no experience or training to perform the duties of a Pumper. New Pumpers received as little as two-weeks of on-the-job training before acquiring the skills needed to successfully perform their duties.

37. Because each Pumper was given a manual containing Defendant's Standard Operating Procedures, which the Pumpers were required to follow, the amount of independent judgment

exercised by the Pumpers was low.

38. During the three year period immediately preceding this Complaint, Plaintiffs regularly worked in excess of forty hours per workweek. For example, from September 16, 2007 until his termination, Plaintiff Daugherty worked approximately three-thousand nine hundred forty nine (3949) overtime hours. In the three years leading up to his termination on September 15, 2010, Plaintiff Grado worked approximately three-thousand nine hundred sixty two (3962) hours of overtime. Other Pumpers have comparable numbers of overtime.

39. Plaintiffs' counsel contacted Defendant regarding Plaintiffs' claims in a letter dated July 7, 2010. *See* Exhibit 1 attached hereto.

40. In early September 2010, Plaintiff Harper suffered a back injury similar to numerous previous injuries he had suffered while working for the Defendant. Plaintiff Harper was required to take time off of work to heal just as he had done previously. For the first time since he was hired, Defendant required Plaintiff Harper to submit a work-release from his physician before Defendant would permit him to return to work. Plaintiffs believe that such a process is required of its "employees."

41. On Friday, September 3, 2010, Plaintiff Gaston was servicing and maintaining wells along his route on his day off. Plaintiff Gaston had previously routinely worked his "days off" and Defendant had expressly approved numerous hours worked by Plaintiff Gaston on days off. At approximately 4:45 p.m., Plaintiff Gaston received a message from Defendant's supervisor Gerald P. stating that he "better have a damn good excuse" for working on his day off. This was the first time ever that Gaston was reprimanded for working on a day off.

42. In letters sent to Plaintiffs Harper, Grimsley, Daniel Gaston and Grado dated September 10, 2010, Defendant alleged that Plaintiffs, via their legal counsel, had "repudiated" their independent contractor agreements with Defendant and Plaintiffs were fired. *See, e.g.,* Exhibit 2 attached hereto. In the very same letter, Defendant invited Plaintiffs to apply for a position as "employees" of Defendant. *Id.* If they were interested in such "employment" position, Plaintiffs were to contact Margie Bowman, an employee of Defendant. *Id.*

43. On September 14, 2010, Defendant's supervisor Gerald P. contacted Plaintiffs Harper, Grimsley, Daniel Gaston and Grado to notify them that they had to arrive at Defendant's "Battlement Room" on September 15, 2010 at 7:30 a.m. to meet with Defendant's supervisor David G. At the meeting, David G. met individually with each Plaintiff. David G. provided each Plaintiff with a copy of the September 10 letter, and informed each that they would need to return to Defendant all of Defendant's property before they would receive their final pay.

44. On September 15, 2010, Plaintiff Harper was contacted by Margie Bowman who asked if he was interested in applying for an employment position. When asked how much he would be paid, Ms. Bowman would not answer.

45. Plaintiff David Gaston was constructively terminated on November 3, 2010, by being subjected to intolerable working conditions, by Defendant threatening to withhold compensation, and by subjecting him to working conditions that others were not, all in an attempt to force Plaintiff to quit.

46. As a direct and proximate result of the above described conduct of the Defendant, Plaintiffs have suffered and will in the future continue to suffer, damages, losses, and injuries,

including, but not limited to, loss of wages, earnings, benefits, and income, a diminution in their earning capacity, and other losses and injuries, all to their damage in an amount to be determined at trial.

47. The conduct of the Defendant has been wilful, wanton and in disregard of the rights and feelings of the Plaintiffs.

48. Plaintiffs are entitled to reasonable attorneys fees as provided by 29 U.S.C. § 216(b).

## FIRST CLAIM FOR RELIEF

49. Plaintiffs incorporate by reference the above paragraphs as if set forth fully herein.

50. The conduct of the Defendant in refusing to pay overtime violates 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act.

51. Plaintiffs, and all those similarly situated to Plaintiffs, are entitled to an award of all overtime compensation due and owing from Defendant together with liquidated damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

52. Plaintiffs incorporate by reference the above paragraphs as if set forth fully herein.

53. Defendant has terminated the employment of Plaintiffs Daniel Gaston, Harper, Grimsley, Grado, and David Gaston in retaliation for their engaging in an activity protected under the Fair Labor Standards Act, 29 U.S.C. § 218c.

54. These Plaintiffs are entitled to an award of damages in an amount to be proven at trial.

WHEREFORE Plaintiffs prays for judgment against Defendant and that the Court do the following:

1. Award Plaintiffs their overtime compensation due and owing, in an amount to be determined at trial;

2. Award Plaintiffs liquidated damages in an amount equal to the amount of overtime compensation due and owing;

3. Award Plaintiffs their reasonable attorneys fees and costs; and

4. Award Plaintiffs Darwin L. Harper, Daniel Gaston, David Gaston, Guillermo Grado and Charles Grimsley compensatory and punitive damages for Defendant's retaliatory conduct as determined at trial;

5. Award Plaintiffs such other relief as this Court deems equitable, just, and appropriate.

PLAINTIFFS DEMANDS TRIAL TO A JURY OF SIX (6).

Respectfully submitted,
KARP NEU HANLON, P.C.


By: /s/*Sander N. Karp
Sander N. Karp (1088)
Todd. D. Zumbrennen (39791)
201 14th Street, Suite 200
Glenwood Springs, CO 81601
Phone: (970) 945-2261
Facsimile: (970) 945-7336
snk@mountainlawfirm.com
tdz@mountainlawfirm.com

Addresses of Plaintiffs:

Mathew Daugherty
420 Mesa Drive
Rifle, CO 81650

Darwin L. Harper
166 Silver Plume Drive
Parachute, CO 81635

Daniel Gaston
483 Casey Way
Grand Junction, CO 81504

David Gaston
2536 Rimrock Ave. #400
Grand Junction, CO 81505

Guillermo Grado
P.O. Box 12
Silt, CO 81652

Charles Grimsley
4606 "W" Road
De Beque, CO 81630

Jared Langley
609 S.W. 20th Street
Seminole, Texas 79360