**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02272-WJM-KLM

MATTHEW DAUGHERTY,
DARWIN L. HARPER,
DANIEL GASTON,
DAVID GASTON,
GUILLERMO GRADO,
CHARLES GRIMSLEY, and
JARED LANGLEY, on their behalf and on behalf of those similarly situated,

      Plaintiffs,

v.

ENCANA OIL & GAS (USA), INC., a Delaware corporation,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

---

      THIS MATTER is before the Court on Defendant Encana Oil & Gas (USA) Inc.'s

("Encana") Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, in the

alternative, Motion to Compel Arbitration and Stay the Proceedings Pending Arbitration

("Motion to Compel Arbitration").  (ECF No. 32.)  For the reasons set forth below, the

Motion to Compel Arbitration is GRANTED and the case is STAYED pending

completion of arbitration between Encana and Plaintiffs Matthew Daugherty

("Daugherty"), Darwin Harper ("Harper"), Daniel Gaston ("Gaston"), Guillermo Grado

("Grado"), Charles Grimsley ("Grimsley"), and Jared Langley ("Langley") (collectively

"Plaintiffs").[1]

## BACKGROUND

The following facts established in the record, unless otherwise noted, do not appear to be in material dispute.  Encana develops and produces natural gas in North America, including Colorado and Texas.  (Amend. Compl., ECF No. 25 at ¶ 4.)  As part of the production of natural gas, Encana employs the services of oil pumpers to service and maintain its gas wells.  (*Id.* at ¶ 5, 7.)

Plaintiffs are all pumpers who worked as contractors for Encana in either the Piceance Basin in Western Colorado or in Texas.  (*Id.* at 7.)  Most of the Plaintiffs have minimal education.  Grimsley dropped out of high school.  (Grimsley Aff., ECF No. 43-1 at 9 ¶ 3.)  Gaston is a high school graduate.  (Gaston Aff., ECF No. 43-1 at 5 ¶ 2.)  Daugherty began at Fort Lewis College in Durango but left after two years.  (Daugherty Aff., ECF No. 40-1 at 1 ¶ 2.)  Langley graduated from New Mexico Junior College. (Langley Aff., ECF No. 43-2 at 1.)

In order to work for Encana, Plaintiffs allege Encana required them to set up a business, carry insurance policies, and sign an Independent Contractor Agreement ("ICA").  (ECF No. 25 at ¶¶ 32, 35; *see* Daugherty Aff.,ECF No. 43-1 at 2.)  Each of the Plaintiffs contracted with Encana through a separate ICA.  (Rice Decl., ECF No. 32-1 at ¶¶ 2-8.)  Gaston's ICA with Encana was direct.  (Gaston ICA, ECF No. 32-2 at 42.)  The

---

[1] The claims of Plaintiff David Gaston were the subject of a separate motion to dismiss, which has been denied.  (ECF No. 51.)  Plaintiff David Gaston did not sign an arbitration agreement with Defendant.  (ECF No. 25 at ¶ 33.)  As a result, his claims are not affected by this Order, and they will proceed in this action not subject to the stay imposed herein on the claims of the other six named plaintiffs.

other Plaintiffs, however, contracted with Encana through separate entities.  Daugherty

signed the ICA in his official capacity as sole proprietor of Daugherty Consulting.

(Daugherty ICA, ECF No. 32-2 at 8).  Harper signed the ICA in his official capacity as

sole proprietor of LB Pumping.  (Harper ICA, ECF No. 32-2 at 28.)  Grado signed the

ICA in his official capacity as owner of W. Grado LLC.  (Grado ICA, ECF No. 32-2 at

36.)  Langley signed the ICA in his official capacity as owner of JL Productions, LLC.

(Langley ICA, ECF No. 32-3 at 8.)  Grimsley signed the ICA in his official capacity as

president of FloRite Testing, Inc. ("FloRite").  (Grimsley ICA, ECF No. 32-2 at 25.)

The terms of Plaintiffs' ICAs are identical.  (*See* ECF No. 32-2; ECF No. 32-3.)

The term of each ICA was for 30 days, and could be renewed by mutual agreement of

the parties.  (*See* Daugherty ICA, ECF No. 32-2 at 2 ¶ 2(a).)  Plaintiffs were given

discretion in the methods and means of performing their services while Encana retained

control over the nature of services and results to be achieved.  (*Id.* at 3 ¶ 4(c).)  As

independent contractors, Plaintiffs were not entitled to employee benefits or

compensation.  (*Id.* at 2 ¶ 4(A).)  Similarly, Plaintiffs were not entitled to overtime pay.

(*Id.* at 3 ¶ 4(B).)

The ICAs each contain a severability provision stating: "If any provision of this

Agreement is held to be illegal, invalid or unenforceable under applicable laws, such

provision shall be severable from the remainder of this Agreement, which shall remain

in full force and effect." (*Id.* at 7 ¶ 22.)  Further, the ICAs contain a dispute resolution

provision stating:

> Any dispute arising out of or related to this agreement (including any
> amendments or extensions,) or the breach or termination thereof, shall be
> settled by arbitration in accordance with the most current American

> Arbitration Association Rules.  The prevailing party shall be entitled to
> recover its reasonable attorneys' fees.

(*Id.* at ¶ 24.)  Plaintiffs have all submitted affidavits stating that the provision allowing for

recovery of attorneys' fees by the prevailing party creates concern that they will not be

able to afford arbitration and will have to abandon their claims.  (ECF No. 43-1 at 2 ¶ 4,

3 ¶ 3, 5 ¶ 3, 7, ¶ 3, 10, ¶ 5; ECF No. 43-2 ¶ 3.)

Despite the terms of the ICA denying employee benefits such as overtime

compensation, Plaintiffs allege they regularly worked six or seven days per week, with

ten to twelve hours each day.  (ECF No. 43 at 4.)  From September 16, 2007 until his

termination in 2010, Daugherty worked approximately 3,949 overtime hours.  (ECF No.

25 at ¶ 38.)  Similarly, Grado worked approximately 3,962 hours of overtime.  (*Id.*)

Encana alleges the ICAs were automatically renewed after each 30-day period

by mutual agreement.  (ECF No. 32 at 4.)  Additionally, Daugherty signed an

amendment to his ICA on August 26, 2008, increasing his hourly pay rate.  (ECF No.

32-2 at 12.)  Harper signed amendments to LB Pumping's ICA on August 10, 2007 and

on February 17, 2009, in order to adjust his hourly pay rate.  (ECF No. 32-2 at 25, 28.)

Langley also signed an amendment to JL Productions' ICA on May 29, 2008 and again

on February 17, 2009.  (ECF No. 32-2 at 11, 14.)  Plaintiffs submitted invoices to

Encana pursuant to the terms of their ICAs and provided proof that they were carrying

general liability insurance pursuant to the ICAs.  (ECF Nos. 32-3 at 45-50; 32-4.)

Langley ended his relationship with Encana in July 2009.  (ECF No. 43-2 at ¶ 1.)

Daugherty was terminated on April 6, 2010 for allegedly failing to follow orders.  (ECF

No. 1 at ¶ 37.)  On July 7, 2010, Plaintiffs' counsel contacted Encana regarding

4

Plaintiffs' potential lawsuit against Encana.  (ECF No. 1-1.)  Encana treated this contact as a repudiation of the ICAs, and on September 10, 2010, submitted letters to Harper, Grimsley, Gaston and Grado informing them that their ICAs were terminated effective September 15, 2010.  (*See* ECF No. 1-2; ECF No. 25 at ¶ 42.)

Plaintiffs filed this lawsuit on September 16, 2010.  (ECF No. 1.)  On November 18, 2010 Plaintiffs filed a First Amended Complaint, asserting employee status and bringing two claims for relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 201, *et. seq.*: (1) refusing to pay overtime in violation of 29 U.S.C.A. § 207(a)(1); and (2) termination of employment as retaliation in violation of 29 U.S.C.A. § 218c.  (ECF No. 25.)  On November 19, 2010, Encana filed a Demand for Arbitration under the Commercial Arbitration Rules.  (ECF No. 32-6.)  Encana filed the present Motion to Compel Arbitration on December 6, 2010, requesting the Court either dismiss the suit because of jurisdictional questions pending arbitration, or requesting the Court compel arbitration and stay the case until arbitration is complete.  (ECF No. 32.) On November 16, 2010, the Court stayed discovery in the case pending resolution of a previously-filed motion to dismiss that had been made moot on the filing of the amended complaint.  (ECF No. 24.)  The stay on discovery, however, is still in effect.  On December 16, 2010, the Court stayed action on Plaintiffs' Motion for Collective Action Certification pending resolution of the Motion to Compel Arbitration.  (ECF No. 35.) The Court heard oral argument on the Motion to Compel Arbitration on June 20, 2011 and took the matter under advisement.  (ECF No. 62.)

**DISCUSSION**

**Determination of the Applicability of the Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, mandates a stay of a judicial proceeding where the parties have executed a written arbitration agreement covering the dispute:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"The Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements," and "[u]nder this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir.2004) (quotations omitted). Common law and the FAA have created a presumption in favor of arbitration. *Riley Manuf. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). Where the Court is satisfied that (1) a valid arbitration agreement exists and (2) the arbitration agreement covers the parties' dispute, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *Encore Prods. Inc. v. Promise Keepers,* 53 F. Supp. 2d 1101, 1107-08 (D. Colo. 1999).

However, "the question of arbitrability – whether a [contract] creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *Riley*, 157 F.3d at 779. "[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). As the Supreme Court explained,

> Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so. In this manner, the law treats silence or ambiguity about the question " who (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" – for in respect to this latter question the law reverses the presumption.

*Riley*, 157 F.3d at 779 (quoting *First Options of Chicago*, 514 U.S. at 944-45).

Whether parties have agreed to arbitration, and the scope of that agreement, is generally determined under contract principles. *First Options of Chicago*, 514 U.S. 938, 944 (1995). In this determination, a federal court relies on state law principles of contract formation. *Id.* at 944; *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). Thus, the Court here applies Colorado law in reviewing the ICAs. Under Colorado law, interpretation of a contract is a question of law. *Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

The Supreme Court has held that the determination of "whether legal constraints external to the parties' agreement foreclosed the arbitration of [certain] claims" is appropriately decided by a court. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163

F.3d 1230, 1235 (10th Cir. 1999).  Thus, the questions raised by the parties in their briefs relating to whether there is a valid and enforceable arbitration agreement in effect between the parties is for the Court, and not an arbitrator, to decide.

**Survival of the Arbitration Agreement Upon Expiration of ICA**

Plaintiffs argue that the ICAs at issue with Encana have expired.  (ECF No. 43 at 9.)  Each of the ICAs were for a term of 30 days, and although renewable by mutual agreement, Plaintiffs argue they were not renewed.  (*See* ECF No 32-2 at 2 ¶ 2(a); Daugherty Aff., ECF No. 43-1 at 2 ¶ 6; Harper Aff., ECF No. 43-1 at 5 ¶ 5;Gaston Aff., ECF No. 43-1 at 6 ¶ 4; Grado Aff., ECF No. 43-1 at 8 ¶ 4; Grimsley Aff., ECF No. 43-1 at  10, ¶ 4; Langley Aff., ECF No. 43-2 at 2 ¶ 5.)  Plaintiff therefore argues that the arbitration agreements within the ICAs have likewise expired.  (ECF No. 43 at 9.)

However, the Tenth Circuit has held that in these circumstances an arbitration provision survives the expiration of a contract:

> Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption:  In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.  Thus, when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute.  This is so even if the facts of the dispute occurred after the contract expired.

*Riley*, 157 F.3d at 781 (citation and internal quotation omitted).  *See also Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275 (10th Cir. 2010) (holding arbitration clause survives expiration of reinsurance agreement and subsequent settlement agreement); *Putnam v. Teletech Holdings*, 2007 WL 678619 *4 (D. Colo. Feb. 28, 2007) (unpublished) (finding arbitration clause terminated by second

agreement that expressly terminated the arbitration clause in the earlier agreement);

*GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1164 (D. Colo. 2001)

(holding arbitration clause in individual employment contract survives termination of

employment when the action complained of related to the employment contract).

The *Riley* court stated that the presumption of survival disappears (1) "if the

parties express or clearly imply an intent to repudiate post-expiration arbitrability;" or (2)

"if the dispute cannot be said to arise under the previous contract." *Riley*, 157 F.3d at

781 (citing *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*,

430 U.S. 243, 254-55 (1977)).

The questions for this Court thus becomes not whether the arbitration agreement

survives the expiration of the ICA, but (1) whether the arbitration agreement was

repudiated by the parties either expressly, or by clear implication, or (2) where there

was no waiver, whether the dispute arises under the contract.

Here, the Court finds no evidence of an express or clearly implied intent to

repudiate post-expiration arbitrability.  An examination of the letter sent by Plaintiffs'

counsel to Encana asserting that Plaintiffs were "employees" rather than "contractors"

does not terminate the ICAs, nor does it repudiate post-expiration arbitrability.  (ECF

No. 1-1.)  Further, Encana's response individually addressed to each current Encana

contractor establishes that while in its view the ICAs terminated effective September 15,

2010, this communication was wholly silent on the issue of the expiration of the

arbitration clause.  (ECF No. 1-2.)  In addition, on September 21, 2010, Plaintiffs

Grimsley, Harper, Gaston, and Grado were offered employee status.  (ECF No. 32-5.)

Here, too, however, there was likewise no mention whatsoever of it being the intent of

9

either party to waive the arbitration clause in the ICA.  (*Id.*)

The Court next looks to whether the actions complained of arose under the ICA. A dispute "arises under" the previous contract when it "either involve[s] rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect."  *Id.* (quoting *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1024-25 (10th Cir. 1990)).

The Tenth Circuit has established a three-part inquiry to determine whether a particular dispute arises under a contract's arbitration clause:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.  Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.  Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Cummings v. Fedex Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (emphasis removed) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001), *cert denied*, 534 U.S. 1020 (2001)).

Here, the Court first determines that the ICA's arbitration clause is broad in that it covers "any dispute arising out of or related to this agreement (including any amendments or extensions) . . . ."  (*See* ECF No. 32-2 at 7 ¶ 24.)  *See GATX*, 171 F. Supp. 2d at 1163 ("This is undoubtedly a broad arbitration clause as it covers not only those issues arising out of the employment contract, but even those issues with any

10

connection to the contract or to the relationship between the parties.").

Because the arbitration clause is broad, the Court need not address when the ICAs expired to determine whether the actions complained of by Plaintiffs arose under the ICAs.  The overtime pay sought by Plaintiffs is an employee benefit directly addressed by Section 4(A) of the ICA.  (*See* ECF No. 32-2 at ¶ 4(A).)  The overtime pay issue arose, at least in part, while the ICA was still in effect.[2]  *Riley*, 157 F.3d at 781. Plaintiffs' retaliation claims arise out the fact they were terminated by Encana allegedly after they asserted a claim right for overtime pay, in potential violation of Section 4(A). (ECF No. 25 at ¶ 53.)  Encana justified the termination of the ICAs, in part, by pointing to Section 2(a) of the contract, which states that the ICA may be terminated if the contractor violates the agreement.  (ECF No. 32-2 at ¶ 2(a).  Thus, these disputed issues arise out of the ICA.[3]

In sum, the Court finds that: (1) the arbitration agreement was neither expressly or by clear implication repudiated by the parties; and (2) the disputes at issue in this action arise under the parties' contract.  The Court concludes, therefore, that the arbitration provision between the parties survived expiration of the relevant ICAs.

**Enforcement of the Arbitration Agreement Personally Against Plaintiffs**

Plaintiffs argue that 5 of the 6 Plaintiffs signed the ICAs in their official capacity

---

[2] The Court notes that Daugherty signed an amendment to his ICA in August 2008, and Harper and Langley each signed amendments to their individual ICAs as recently as February 2009, indicating that the ICAs had not expired at that time.

[3] Even if Plaintiffs were "employees" and not "contractors," the Court finds the retaliation claim is related to the ICA because of the broadness of the arbitration clause.

as agent for a company they either owned or controlled, and thereby are not, in their individual capacities, parties to the arbitration clauses.  (ECF No. 43 at 13.)  Plaintiffs do not dispute that Gaston signed his ICA in his individual capacity.  (ECF No. 32-2 at 48.)  All other Plaintiffs entered into a contractual agreement with Encana in their official capacities as signatories on behalf of a business entity.[4]  (ECF No. 32-1 at ¶¶ 3-5, 7, 8.)

While an individual not a party to the contract generally cannot be compelled to arbitration, "a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if the parties to the contract so intend."  *Id.* (citing *Everett v. Dickinson & Co.*, 929 P.2d 10 (Colo. App. 1996); *Eychner v. Van Vleet*, 870 P.2d 486 (Colo. App. 1993)).  *See also Hicks v. Cadle Co.*, 355 Fed. Appx. 186, 193 (10th Cir. 2009) (unpublished) (citing *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.")); *Smith v. Multi-Financial Securities Corp*, 171 P.3d 1267, 1272 (Colo. App. 2007) (compiling cases).  In *Everett*, the court explained that

> [a] third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party. . . .  Such an intent to benefit a third party must be apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a nonsignatory is a third-party beneficiary entitled to enforce the agreement.

---

[4] Encana initially entered into a Master Services Agreement with FloRite in 2004, of which Grimsley served as President.  (ECF No. 32-1 at ¶ 8) In 2009, Encana entered into an ICA with FloRite.  (*Id.*)  Grimsley signed this ICA.  (*Id.*)

*Everett*, 929 P.2d at 12 (citations omitted).

The Colorado Court of Appeals has held that an arbitration provision was enforceable where the plaintiff, an employee whose employer signed the contract at issue, wished to enforce duties and obligations arising from the agreement. *Parker v. Center for Creative Leadership*, 15 P.3d 297, 298-99 (Colo. App. 2000) (citing *Lee v. Grandcor Medical Sys., Inc.*, 702 F. Supp. 252 (D. Colo. 1988) (third-party beneficiary must accept contract's burdens along with its benefits); *Ga. Power Co. v. Partin*, 727 So. 2d 2 (Ala. 1998) (same). Thus, where a party signs a contract as an agent for a company and not in an individual capacity, if that individual is an intended beneficiary of the contract, he should be held to all provisions of the contract, including an arbitration agreement.

Here, each of the plaintiffs signing an ICA in his official capacity did so as an intended beneficiary of the contract. Within the terms of the ICA there was included the rate of pay, which Plaintiffs assert was a reason for signing the ICA. (Daugherty Aff., ECF No. 43-1 at 2 ¶ 5; Harper Aff., ECF No. 43-1 at 4 ¶ 5; Grado Aff., ECF No. 43-1 at 8 ¶ 4; Grimsley Aff., ECF No. 43-1 at 10 ¶ 4; Langley Aff., ECF No. 43-2 at ¶ 5.) In signing the ICAs, each plaintiff sought "the burdens along with [the] benefits" of being a Pumper for Encana. The ICAs are thus personally enforceable against each of the Plaintiffs.

**The Purported Unconscionable Nature of the Arbitration Agreement**

The arbitration agreement in Plaintiffs' ICAs states:

Any dispute arising out of or related to this agreement (including any amendments or extensions,) or the breach or termination thereof, shall be

13

> settled by arbitration in accordance with the most current American Arbitration Association Rules.  The prevailing party shall be entitled to recover its reasonable attorneys' fees.

(*See* ECF No. 3202 at 7 ¶ 24.)

Plaintiffs argue that this arbitration agreement is unconscionable.  (ECF No. 43 at 12.)  Plaintiffs assert they had no meaningful choice but to accept Encana's terms and had no opportunity to negotiate the ICA's provisions.  (*Id.*)  Plaintiffs were not given an opportunity to have outside counsel review the arbitration provision, nor was the provision explained to them.  (*Id.* at 13.)

In Colorado, a contract may be revoked if it is unconscionable.  *Univ. Hills Beauty Acad. Inc. v. Mountain States Tel. & Tel. Co.*, 554 P.2d 723, 726 (Colo. 1976).  "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445 (2006).  Therefore, to defeat Encana's Motion to Compel Arbitration, Plaintiffs must show that the arbitration clause itself – and not the contract in general – is unconscionable and, therefore, unenforceable.  *See Rent-A-Center, W., Inc. v. Jackson*, --- U.S. ---, 130 S. Ct. 2772, 2778 (2010) ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4.").

Colorado courts consider several factors in determining whether a contractual provision is unconscionable, including:  (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the

14

absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.  *Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo. 1986).

In *AT&T Mobility v. Concepcion*, the Supreme Court held a state may not apply its own law on contract interpretation and formation – including unconscionability – in a manner that interferes with the FAA's presumption in favor of arbitration.  --- U.S. ---, 131 S. Ct. 1740 (2011).  The Court held:

> When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA.  But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration.

*Id*. at 1747.  The Court struck down California's so-called *Discover Bank* rule which provided:

> When the waiver [of class proceedings] is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party "from responsibility for its own fraud, or willful injury to the person or property of another."  Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (Cal. 2005) (quoting Cal. Civ. Code § 1668).

The Court stated that "[t]he 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'" *Id.* at 1748 (quoting *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)).  The Court acknowledged that parties may agree to limit the subject of their arbitration, may agree to arbitrate according to specific rules, and may limit with whom they arbitrate.  "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute."  *Id.* at 1749.  However, the Court emphasized that there is "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Id.*  The Court concluded that "class arbitration, to the extent it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA."  *Id.* at 1751.  Thus, because the *Discover Bank* rule disfavored arbitration, it was preempted by the FAA.  *Id.*

Because Colorado's test for unconscionability of a contract provision does not explicitly disfavor arbitration (class or otherwise), the degree to which *Concepcion* changes the legal landscape in Colorado is unclear.  There does not appear to be any reason why the *Davis* factors are not still good law.  Thus, the Court will consider the facts of this case under that structure, keeping in mind the Supreme Court's statements and observations in *Concepcion.*

The ICA's arbitration provision was contained within a standardized agreement prepared by Encana.  Plaintiffs have submitted affidavits stating that they did not know there was an arbitration provision in the ICA, that no one pointed out the arbitration clause or explained what it meant; and that they did not believe they had the ability to

16

negotiate the terms of their contracts.  (Daugherty Aff., ECF No. 43-1 at 2 ¶ 5; Harper

Aff., ECF No. 43-1 at 4 ¶ 5; Gaston Aff., ECF No. 43-1 at 6 ¶ 5; Grado Aff., ECF No. 43-

1 at 8 ¶ 4; Grimsley Aff., ECF No. 43-1 at 10 ¶ 4; Langley Aff., ECF No. 43-2 at ¶ 5.)

Plaintiffs were not advised to have a lawyer review the ICAs before signing them.  (*Id.*)

Plaintiffs argue Encana used its superior bargaining strength to impose terms on a take-

it or leave-it basis.  All of these factors weigh in favor of finding the ICAs

unconscionable.

Plaintiffs' argument has some validity and the Court would likely have found that

the arbitration agreement at issue here unconscionable pursuant to the *Davis* analysis if

it were issuing this decision pre-*Concepcion*.  But the Court has to take the legal

landscape as it lies and cannot ignore the Supreme Court's clear message.  Plaintiffs

are essentially arguing that the adhesive nature of the contracts at issue here (*i.e.*,

standardized forms, lack of ability to negotiate, power disadvantage, etc.) makes the

arbitration agreement unconscionable.

In *Concepcion*, the Supreme Court rejected the idea that arbitration agreements

are *per se* unconscionable when found in adhesion contracts.  The Court recognized

that California's rule applied only to adhesion contracts and observed that "the times in

which consumer contracts were anything other than adhesive are long past."  *Id.* at

1750.  The Court noted that states were "free to take steps addressing the concerns

that attend contracts of adhesion – for example, requiring class-action-waiver provisions

in adhesive arbitration agreements to be highlighted" but ruled that "[s]uch steps cannot,

however, conflict with the FAA or frustrate its purpose to ensure that private arbitration

agreements are enforced according to their terms."  *Id.* at 1750 n.6.

17

The fact that the contract at issue in *Concepcion* was an adhesion contract did not affect the Supreme Court's analysis and, indeed, the majority in *Concepcion* appeared to be little troubled by that fact.  As a result, this Court has no alternative but to discount the weight to be attributed to the adhesive nature of the arbitration clause at issue here.  Accordingly, the Court finds that the arbitration agreement contained within the ICAs is not unconscionable.

**Unenforceable Provisions Within the Arbitration Agreement**

Plaintiffs argue that the arbitration clause thwarts the policy of the FLSA by denying Plaintiffs access to a judicial forum without fear of unbearable costs.  (ECF No. 43 at 16.) Plaintiffs also argue that the arbitration provision providing that the prevailing party is entitled to recover attorneys' fees requires Plaintiffs to forgo their FLSA right to pursue their claims without risking an award of attorneys' fees against them.  (*Id.*)

In *Gilmer v. Interstate/Johnson Lane Corporation*, the Supreme Court held that statutory claims are arbitrable under the FAA.  500 U.S. 20, 26 (1991).  *See also Shankle*, 163 F.3d at 1233. The Court reasoned that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum."  *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors*, 473 U.S. at 628).  "[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."  *Gilmer*, 500 U.S. at 28 (quoting *Mitsubishi Motors*, 473 U.S. at 637).

However, where the terms of an arbitration agreement prevent an individual from vindicating his or her statutory rights, the arbitration agreement is unenforceable.  *See*

18

*Shankle*, 163 F.3d at 1234.  The Tenth Circuit has held that "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and *accessible* alternative forum."  *Id.* (emphasis added). In *Shankle*, the court found an arbitration agreement unenforceable when it "placed [Plaintiff] between the proverbial rock and a hard place – it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum." 163 F.3d at 1235.  The court reasoned that the employer "required [Plaintiff] to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory rights.  Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws."  *Id.*

*Shankle* set the standard in this Circuit that an arbitration agreement requiring a plaintiff to share in the costs of arbitration is unenforceable when the agreement effectively deprives the plaintiff of an accessible forum to resolve his statutory claim and vindicate his statutory rights.  *Id.  See also Perez v. Hospitality Ventures-Denver LLC*, 245 F. Supp. 2d 1172, 1173-74 (D. Colo. 2003) (finding arbitration clause unenforceable where plaintiff cannot afford arbitration costs); *Gourley v. Yellow Transp.*, 178 F. Supp. 2d 1196, 1204 (D. Colo. 2001) (same).

Here, Plaintiffs signed the ICAs as a condition of working as pumpers for Encana.  The ICAs contain an arbitration clause requiring Plaintiffs to arbitrate all disputes arising out of or related to the terms of the ICAs under the rules of the American Arbitration Association ("AAA").  Further, the prevailing party in the arbitration is entitled to recover attorneys' fees.  Plaintiffs have filed affidavits stating that they are

unable to pay costs associated with arbitration, and that if they could be faced with paying Encana's attorneys' fees, they will have to abandon their claims against Encana.

In accordance with the arbitration provision and in response to the filing of this suit, Encana filed a Demand for Arbitration with the AAA under the Commercial Arbitration Rules.  (ECF No. 32-6.)  Under these rules, a claim between $300,000 and $500,000, which Encana estimated in its application, requires an initial filing fee of $4,350 and a final fee of $1,750.  *Commercial Arbitration Rules and Mediation Procedures*, American Arbitration Association, June 1, 2010 at 54, http://www.adr.org /si.asp?id=6447 [hereinafter *Commercial Arbitration Rules*].  Under Rule 50, the parties may be required to share in the cost of producing any witnesses or other proof requested by the arbitrator.  *Id.*, R-50 at 40.[5]   Based on an approximate calculation of arbitrator fees provided by counsel, Plaintiffs estimate arbitration fees could be between $15,000 and $76,000.  (ECF No. 43 at 20 n.15.)

Further, under Commercial Arbitration Rules 43(b) and (c), an arbitrator may assess and apportion fees, expenses, and other compensation between the parties. *Commercial Arbitration Rules*, R-43 at 37.  This approach would be consistent with the language in the arbitration agreement which allows for an award of attorney's fees to

---

[5] The Court notes that the AAA Employment Arbitration Rules provide that in regard to disputes arising out of employer-promulgated plans, an employee filing a claim pays a filing fee of no more than $175. *Employment Arbitration Rules*, American Arbitration Association, June 1, 2010 at 40 ¶ (i), http://www.adr.org/si.asp?id-6450.  All other expenses are borne by the employer. *See id.* at 40-42.  However, these Employment Arbitration Rules specifically do not apply to independent contractor agreements. *Id.* at 16.

the prevailing party in the arbitration.  The FLSA, on the other hand, provides that where judgment is awarded to the plaintiff, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.A. § 216(b).  The statute does not allow for attorneys' fees to be paid to a defendant by virtue solely of being the prevailing party.  *Id.*

The Court finds that these two provisions of the arbitration agreement are unenforceable.  First, the requirement that arbitration of issues arising out of the ICAs follow the Commercial Rules of the AAA would require Plaintiffs to be assessed one-half of the total costs of arbitration, including the fees of the arbitrator.  The Plaintiffs' affidavits establish clearly that they cannot afford these forum costs.  (Daugherty Aff., ECF No. 43-1 at 1 ¶ 3; Harper Aff., ECF No. 43-1 at 3 ¶ 3;Gaston Aff., ECF No. 43-1 at 5 ¶ 3; Grado Aff., ECF No. 43-1 at 7 ¶ 3; Grimsley Aff., ECF No. 43-1 at 10 ¶ 5; Langley Aff., ECF No. 43-2 at 1 ¶ 3.)  Enforcement of this provision would, therefore, effectively preclude them from pursuing their claims.  *Shankle*, 163 F.3d at 1235.

Second, by providing for an award of attorneys' fees to the prevailing *party,* instead of a prevailing *plaintiff*, this clause in the arbitration agreement substantially thwarts the statutory enforcement scheme erected by the FLSA.  This enforcement scheme includes, most notably in these circumstances, the private attorney general mechanism set up by Congress to enforce the policies and objectives of the FLSA. *Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987) (quoting *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 11 (D.C. Cir. 1984)).  Plaintiffs' affidavits make plain they have no financial ability to pay Encana's attorneys' fees were Defendant to prevail before the arbitrator.  The chilling effect of this fee-shifting provision on Plaintiffs'

ability and willingness to attempt to press their claims under the FLSA is clear.

Arbitration provisions like the two discussed here erect impermissible obstacles to Plaintiffs' ability to avail themselves of the rights and protections afforded by the FLSA.  *See Barrentine v. Arkansas-Best Freight System, Inc.* 450 U.S. 728, 740 (1981) (a waiver of substantive rights would thwart policy behind FLSA); *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) (the purposes of the FLSA may not be frustrated by contract); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir. 1951) (a contract that circumvents the Wage and Hour Act (FLSA's predecessor) is unenforceable).  With this in mind, the Court will not enforce, and will not permit the arbitrator to enforce and give effect to, these two provisions in the arbitration agreement.

### Severability of the Unenforceable Provisions in the Arbitration Agreement

Under Colorado law, "[a] court's duty is to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed." *Randall & Blake , Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003)  A court looks to the language of the contract to determine the intention of the parties. *Id.*  Where a contract contains a "severability" or "savings" clause, void or otherwise unenforceable provisions may be severed from the contract.  *Fuller v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000) ("The savings clause . . . allows me to disregard the fee-splitting provision so as to uphold the validity of the agreement.")  *See also Shankle*, 163 F.3d at 1235 n.6; *Perez*, 245 F. Supp. 2d at 1174 (comparing cases); *Gourley*, 178 F. Supp. 2d at 1204.

In *Fuller*, the court struck a portion of the contract at issue entitled "Arbitration Fees and Costs" as unenforceable because the terms required an equal share of

22

arbitration costs between the parties.  *Fuller*, 88 F. Supp. 2d at 1161-62.  However,

because there was a savings clause in the contract, the court upheld the remainder of

the arbitration provision, citing support of the FAA:  "Federal case law and statutory law

clearly creates a presumption in favor of arbitrability. . . . Thus, [the court] must resolve

all doubts in favor of arbitration and the Arbitration Agreement must be liberally read."

*Id.* at 1162 (citations omitted).  Further, the Tenth Circuit has held that "where an

agreement contains a 'savings and severability' clause, the agreement 'should not be

completely obliterated because some provisions are beyond the legal limits . . ., unless

such illegal provisions permeate the complete contract to such an extent as to affect its

enforceability entirely.' " *Id.* (quoting *N.L.R.B. v. Tulsa Sheet Metal Works, Inc.*, 367

F.2d 55, 59 (10th Cir. 1966)).

Accordingly, where a contract contains a void arbitration provision, it must either

be deemed unenforceable where there is no savings clause to the contract or, in

keeping with the presumption in favor of arbitrability in the case of a contract with a

savings clause, the void language may be stricken and the arbitration agreement

otherwise enforced.  Here, as discussed previously, the ICAs do in fact include a

severability or savings clause.  The offending provisions will therefore be stricken, and

the remaining terms of the arbitration agreement will be given effect.

To the extent, therefore, that any term or clause of the arbitration agreement in

the ICAs requires application of the AAA Commercial Rules, and such rules in turn

permit assessment of any costs of the arbitration to be borne by Plaintiffs, it is

unenforceable, and is hereby stricken.  In addition, to the extent that any term or clause

of the arbitration agreement allows for the award of attorney's fees to Encana in the

event it is the prevailing party in an arbitration, it is also unenforceable, and is hereby likewise stricken.  All other provisions of the arbitration agreement are to be enforced at arbitration as written.

**CONCLUSION**

Based on the foregoing findings and analysis, it is hereby ORDERED that:

1)   Defendant's Motion to Compel Arbitration of the claims of Plaintiffs Matthew Daugherty, Darwin Harper, Daniel Gaston, Guillermo Grado, Charles Grimsley, and Jared Langley, ECF No. 32, is GRANTED;

2)   Arbitration of Plaintiffs' claims may take place only in a manner not inconsistent with this Court's Order; and

3)   The claims of Plaintiffs Matthew Daugherty, Darwin Harper, Daniel Gaston, Guillermo Grado, Charles Grimsley, and Jared Langley are STAYED pending completion of arbitration.

Dated this 15th day of July, 2011.

BY THE COURT:

William J. Martínez
United States District Judge